Victim impact can be considered under 3553A, but it can't run afoul of Bearden. And so how can a court consider victim impact but not consider inability to pay restitution? We've heard a lot of talk about tragic situations, emotional distress, people crying, psychological well-being of victims, and you can have a case where there's physical harm. So there are ways to consider under 3553A the victim impact. Where the line has to be drawn is if the victim can't be made whole, you can't consider that an aggravating factor. So there are ways to complete that delicate balance of considering victim impact, listening to victims, and hearing how maybe even if they are paid, if there's a Bernie Madoff situation and someone is made completely whole in the future, it doesn't mean they didn't have emotional distress. Just because someone receives restitution doesn't mean they didn't have months or years of emotional distress. They still may have lost their home. It may have been their family home. There can be lots of ways that someone can have a horrible victim impact and still be paid back. So that's where we have to draw the line between victim impact and ability to mitigate their financial loss. Let me ask you a more foundational question. You're here on a 2255 habeas petition alleging ineffective assistance of counsel under Strickland v. Washington. As I understand the timing when the appeal was filed, it was before Burgum had issued, so that the consideration of inability to pay restitution, as it might influence the length of the sentence, was not obviously impermissible as a matter of law. Why would it have been a violation of Prong 1 of Strickland, the state of the law at that time? A couple of reasons. Bearden has been the clearly established United States Supreme Court law since 1983. And when appellate counsel in this case realized the issue, raised it in a petition for rehearing. That's too little, too late. It should have been raised in the opening brief. As I recall, our panel didn't even address the issue at that stage, did it? It amended the opinion on a different ground but didn't say anything about the issue. Exactly. The panel ignored it, as would be expected, because it's not appropriate to raise that kind of issue at the 13th hour. Okay, so if we were to agree that there was a Prong 1 violation, it would have to be on the basis of Bearden as opposed to Burgum. Bearden and Burgum, because Burgum was plain error. So when an issue is that obvious that it wins on plain error, that's another indication that Bearden applies in this situation. So we should apply it retroactively on collateral review? Well, Burgum, it just informs the court's decision in this case. Mr. Hermanson, you're being a little cagey with me. I think the answer is no, that it can't apply retroactively on collateral review. It's too late. So we have to find under Prong 1 of Strickland that at the time counsel was representing Mr. Nathanson at sentencing, it should have been clear to a reasonable criminal law practitioner that there was an error that he should have objected to contemporaneously. Correct. And since Bearden's been around since 1983, and because, I mean, Burgum was plain error, so that shows at least one panel of three judges found that it was an obvious. But now that we have Rangel, how can you say that it was deficient for the counsel not to object? I mean, the line between Rangel and Burgum is, at best, very fine, isn't it? I appreciate the question. If we were on bonk, I would argue that Rangel's wrongly decided. But Rangel is an egregious case that's in front of your honors right now. And Rangel does draw a fine distinction. As counsel pointed out earlier, Rangel deleted the words about unmitigated loss. So Rangel tries to walk that fine line. And there is a huge difference between Rangel and this case. So the difference between Rangel and this case is that Rangel looked at suffering, and Judge Carney in this case looked at suffering and Mr. Nathan's inability to mitigate that suffering. That's where Judge Carney crossed the line, and that's at ER 41. But if he had just said that those two things were one factor instead of saying that they were two, would he still have violated the law in your view? If he had said the victims have a horrible impact here, lots of psychological damage, and therefore that's an aggravator and I'm going to increase the sentence, that would be consistent with Rangel. But here he said it was both. And what he specifically said, Judge Carney's words in this case proved beyond a reasonable doubt that he believes Burgum was wrongly decided. Well, I think what he said as I read the transcript was the Burgum majority misunderstood what I said and that Judge O'Scanlan's dissent in Burgum more accurately described my thought process. That's not what I'm talking about, Your Honor. I'm talking about what he did in this case regarding this case. He says in footnote 8 on page ER 41, a defendant's inability to pay at lines 25 through 28. A defendant's inability to pay restitution, however, could very well be an aggravating factor that could justify increasing a defendant's sentence in circumstances where a defendant has unlawfully taken the victim's money or property and cannot return it or pay it back. The court would be punishing the defendant not because of his or her poverty, but because the defendant cannot mitigate the financial harm and loss that the defendant caused the victim to suffer. So that's double speak. On the one hand, he's admitting that you can – he's saying what is not true under Burgum and Bearden, that you can punish someone for not being able to mitigate the loss. But how is that different from observing that the victims have lost all this money and they're never going to get it back? It's diametrically opposed to that. It's not true that it is. Your Honor, he's saying that you can – it's an aggravating factor that can increase the sentence. And that's not true. But if it's okay to say they'll never get the money back, what's the difference between saying the victims will never get the money back and saying this defendant will never be able to pay them back? Those two are the same, right? No one else is going to give them the money back. The difference is he's saying it's a factor that aggravates the sentence. He cannot say that, and he believes it to be true. The victim has got to be influenced in part by whether there is any collateral source. An insurance policy would be the best example I can think of that might ameliorate the harm. Here, we don't have that. There's no insurance, and the amount of money that's taken is so great. Given the resources of the defendant, they're not going to get it from him. So I'm still trying to thread the needle here and understand why it's error for the district court to take into consideration that fact, which is called for under the statute, 3553A. Because 3553A doesn't trump Bearden. 3553A does not allow a district judge to punish someone for their poverty. 3553A does not allow for a judge to say, you can't pay him back, I'm giving you more time in prison. That is impermissible, it is not allowed, and that's exactly what happened here. And it's blatant. He does it over and over again, and he specifically says it in footnote 8. He does not believe Burgum was properly decided. He doesn't agree with the principle the United States Supreme Court espoused in Bearden. Didn't we have at least one circuit judge who didn't think that Burgum was properly decided either? Isn't that why Judge O'Scanlan wrote a dissent? Well, it's the law of the land. Maybe, again, we're semantics here, but the district judge who says on the one hand, the majority didn't understand my thought process, and... May I reserve? Sure. Thank you. I think you're reading a footnote out of context. The first two lines of that footnote text is, it is difficult to conceive circumstances when a defendant's inability to pay a fine would ever justify increasing his or her sentence. The court inevitably would be punishing the defendant wrongfully because of his or her poverty. Then he goes into the language which you quoted, but because the defendant cannot mitigate the financial harm and loss that the defendant caused the victim to suffer. Your Honor, it's doublespeak. He wants to have it both ways. He wants to recognize that Burgum is the law of the land and then violate it. Those two, the last sentences in that footnote are... Partially quoting a judge's statement is sometimes not the best way to convince us of your argument. Your Honor, he recognizes Burgum but then violates it. Okay. I'll give you a minute on rebuttal. Let's hear from the government. Your Honor, good morning. Rob Keenan for the government. There was no Sixth Amendment violation here. Mr. Nathanson received effective assistance of counsel and direct appeal. And the defendant falls far short on this record of establishing what he needs to do under Smith v. Robbins. I wanted to focus on what I think we're arguing about here, the language in Burgum versus the language in this case. And I think the best example of why the defendant can be seen here to be trying to place a square peg in a round hole is on page 13 of the defendant's reply brief. There they put a table together showing the language in Burgum and purporting to show the language in Burgum, not all of it as it turns out, in the language here. And you'll see that the quote in Burgum ends with an ellipsis. And that's the whole story. That's the important language in Burgum that the panel majority found to run afoul of the Fifth Amendment, the Due Process Clause. The language that was omitted from that fancy table is as follows. Mr. Burgum not really having the finances or the financial condition to even pay a fine, unquote. There's no such language in this case where Mr. Nathanson's finances were expressly referenced, his financial condition, or an inability to pay a fine. Nor even an express reference to his inability to pay restitution. The specific comments by Judge Carney in this case was, I'm not quoting all of it, but the key language, quote, realistically, dot, dot, dot, there is no possibility of restitution in this case. And then he goes on to say that the victims are, quote, not going to get their money back. Those are the two main observations that he described as one of the aggravating factors. Saying no possibility of restitution, though, means he can't pay restitution, right? No, actually, on this record, that's not at all clear for a couple of reasons. Both parties agreed, myself included on behalf of the government, that in light of the poor record keeping in the way that Mr. Nathanson managed this several years long Ponzi scheme, it was basically impossible to allocate specific restitution amounts to the thousands of victims in that case, victimized by Mr. Nathanson. So that was one problem, the difficulty of even calculating restitution in a meaningful, reasonable way without wasting a lot of time. So that was one concern, having nothing to do with inability to pay restitution. But just on that one, I mean, if he had money, you would have found a way to give the money to the victims, I assume, wouldn't you? The SEC's receiver tried to do so in the related civil case, seized a number of homes, I believe it was three homes, and tried to liquidate them, but wound up losing those assets to other creditors that filed a separate claim to seize those assets. So none of the money that the receiver had gathered together as part of the SEC's case were available ultimately to give to the victims at all. Right, but that's because he had debts, too. So, I mean, if he had plenty of money and no debts, presumably some of the money would have gone to the victims. That's true. But there are other reasons on this record to doubt whether or not the judge is referring specifically to the inability, to Mr. Nathanson's finances, in other words, his inability to pay restitution. Number one, and these are noted in the pre-sentence report, the letter attached to the front of the pre-sentence report, his age, the length of the term of imprisonment opposed, the likelihood that he would be deported after he's released from custody if he survives the lengthy term of imprisonment. So those are all sorts of reasons why restitution on the facts of this case was not going to be available to the victims, apart from the fact that by the time of the sentencing hearing he had no apparent assets left. So I think that's a significant fact on this record. And why, getting to the deficiency or the sufficiency of the counsel's performance on direct appeal, why it wasn't clear or obvious that we had a Bearden-type due process violation here on this record. Even, and that's especially true because this decision, the Nathanson direct appeal, all was resolved before the decision in Burgum was issued. So the appellate counsel didn't have that. If Burgum had been decided before Nathanson's appeal had been completed, would the result here be different? No, the result wouldn't be different. And that's because, as I noted earlier, these are two different sentencing hearings with different language being used. And I do think that the language that I quoted earlier about specific references to Mr. Burgum's finances, financial condition, and inability to pay a fine were really the aggravating factors that caused the majority in Burgum to say, we need to remand because we're not sure what he means by that, what Judge Carney means by that. So I don't think the facts would be different, especially in light of some additional developments with Rangel and Anacu, where they substantially cut back the Burgum decision. Or, I don't know if it's fair to say, substantially cut it back. They clearly delineate what it says and what it doesn't say. And it's entirely permissible for district courts posing sentences in fraud cases to recognize what 3553A tells them to look at, the seriousness of the offense. And one aspect of that in large scale Ponzi schemes like this is the serious and permanent nature of the financial harm caused to the victims. And it is difficult to sort of acknowledge at least one aspect of the defense argument here. It's difficult to talk about that in some cases without brushing up against the fact that the defendant is unable to repay them. The permanent nature of the restitution of the victim's harms is often, I think, a consequence of that. It's not clear on this record for the reasons I mentioned earlier. There are all sorts of reasons why restitution wasn't available and wasn't ultimately even ordered. But in other cases, it is difficult to talk about those two things without at least potentially suggesting a reference to an inability to pay restitution. And here the judge actually listed them as two different aggravators, right? Yes. And Rangel makes clear that it's okay for district judges to talk about the harm to the victims. And when – and the reference in that case to the – I think the phrase was actually used, inability to pay restitution, that that wasn't an inappropriate comment by the district judge in the Rangel case. It's also – in the Ineclu case, we know from that decision that this court has made clear district judges can make comments about the victim's harm, the harm that they're suffering, because it's an effort by the district court to communicate with the victims in the audience in that case. And in the Nathanson case, as I point out – But in Ineclu, it was also because the district court was looking at the need to pay restitution later, right? That's correct. But in Ineclu, it makes clear it's okay for district judges to talk to the victims in the audience, if not expressly acknowledging their concerns and their interests. And in the Nathanson case, we did have a couple of victims of the thousands ultimately show up for the sentencing hearing in that case. Lastly, I think I would note on – in terms of prejudice, we have the benefit now of a written order from Judge Carney, where he explains even if an objection had been made, quote, Nathanson's sentence would have been the same, unquote. It's on page 44 of the record. So we have a very good record showing that there's no ultimate prejudice. That would have been about trial counsel, though, right? And isn't the claim here about appellate counsel? Well, I think ultimately the question gets to what would have happened on a remand. Wouldn't the prejudice inquiry be the same, though? In other words, if appellate counsel has committed a Strickland violation, it's still the same two-prong analysis, and ultimately the question is would Nathanson have obtained any better relief on collateral review? Right. And I recognize there's a distinction there to be made, but ultimately we've got an order from Judge Carney indicating that the sentence wouldn't be any different because his primary concern in that case was Mr. Nathanson had engaged in a Ponzi scheme for several years involving several companies where the loss amount was, depending on the point of view, either $22 million or $50 million, which is what the government argued at the sentencing hearing, but a significant harm to a lot of people, and that was his primary motivating concern when he imposed the – In Burgum, though, on remand he actually lowered the sentence, right? So even though he disagreed with Burgum. He did. That's one last thing I would like to end on. You know, the portrayal of Judge Carney as this rogue judicial officer, you know, loosed upon his land is not a fair characterization of his work in this case or any of the others that have been presented sort of collaterally here. He's – in the Burgum resentencing hearing, he's mindful of the court's opinion and earnestly tries to follow it, and I don't think footnote 8 suggests any disagreement with Burgum in the way that defense counsel has suggested it.  Now, Rangel says you can look – it sort of gets to the point earlier I made that, you know, when you're talking about the permanent harm to victims in a fraud case, you wind up somewhat brushing up against about the fact that the defendant is unable to pay in some cases. So for that reason, I don't think it's inconsistent. It certainly doesn't reflect any disregard or lack of respect, certainly by the district judge in this case towards this court, and I think any suggestion to the contrary is untrue. All right. Thank you. Thank you very much. Mr. Hartmanson, I'll give you a minute on rebuttal. Thank you, Your Honor. If I just may quickly make four points. The first is it goes to Judge Bea to be absolutely fair to the record and to show that, yes, Judge Carney did in the record indicate beyond a reasonable doubt that he was punishing for inability to pay. I would refer the court respectfully to ER-3 and ER-4, where the court says that he's identifying aggravating and mitigating factors on ER-3, line 10, and then reading through on ER-4 at the top, I thought it was also troubling realistically that there is no possibility of restitution in this case. So that shows in context that he's punishing for failure to pay restitution. The second point I'd like to make. But wouldn't restitution mitigate the damage to the victims? Exactly. Well, that's the other side of the coin. Right. My point is that he can't consider that under Bearden and Bergen. My second point of four is Rangel. The court's discussion in Rangel makes clear, as Rangel says, the court's discussion makes clear that the district court's discussion that the court was not trying to punish Rangel for his inability to pay. So that we don't have here. My third point is regarding Anna Q. There, the only thing the court was, however, I'm sorry if I'm pronouncing it incorrectly. No, no, go ahead. There, the district court was considering imposing a lesser sentence. And Bearden says that poverty is a one-way ratchet. If someone can be out working to pay restitution, you can lower their sentence. So Anna Q. doesn't help the government. Okay. Thank you very much, Mr. Hermanson. Your time has expired. The case just argued is submitted.
judges: Tallman, Bea, Owens, Friedland